# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0191V
UNPUBLISHED

| | |
|---|---|
| CURTIS DEVLIN,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: August 7, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barre Syndrome<br>(GBS) |

*Anne Carrion Toale*, Maglio Christopher & Toale, PA, Sarasota, FL, for Petitioner.

*Wei Kit Tai*, U.S. Department of Justice, Washington, DC, for Respondent.[1]

## DECISION AWARDING DAMAGES[2]

On February 1, 2019, Curtis Devlin filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[3] (the "Vaccine Act"). Petitioner alleged that he suffered Guillain-Barré syndrome ("GBS") casually related to the influenza ("flu") and pneumonia[4] vaccinations he received on December 20, 2017. Petition at 1, ¶¶ 1, 15. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

---

[1] Mr. Tai substituted at hearing for Respondent's counsel of record, Christine Becer.

[2] Because this Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[4] Petitioner's vaccine record indicates he received the Prevnar 13 vaccine, a pneumococcal conjugate vaccine, which is also covered under the Vaccine Program. Ex. 1 at 2; *see Bundy v. Sec'y, Health & Human Servs.*, No. 12-769V, 2014 WL 348852, at *1 (Fed. Cl. Spec. Mstr. Jan. 8, 2014).

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount **$180,000.00 for his past pain and suffering.** Petitioner is not, however, entitled to compensation for *future* pain and suffering.

## I.     Relevant Procedural History

Approximately one year after the petition was filed in this case, Respondent filed a Rule 4(c) Report conceding that Petitioner's injury met the Table definition for GBS following receipt of the seasonal flu vaccine. ECF No. 23; *see* 42 C.F.R. § 100.3(a) XIV.D. (2017) (definition of a Table GBS). I issued a Ruling on Entitlement on February 18, 2020. ECF No. 24. The parties thereafter made some efforts to settle damages but were unsuccessful. Both sides eventually agreed to my proposal that they participate in an expedited hearing, completing damages briefing by July 2, 2020. ECF No. 38 (joint status report); ECF Nos. 33, 35, 39 (parties' briefs). The expedited hearing was held on July 31, 2020,[5] and at its conclusion I orally informed the parties of my determination.

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and

---

[5] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated July 31, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited June 1, 2020).

2

suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.     The Parties Arguments

Petitioner requests $180,000.00 for past pain and suffering, plus a future component in the form of annual payments of $1,000.00 per year for his life expectancy of 16.6 years. Petitioner's Memorandum ("Mem.") at 25, ECF No. 35. In support, Petitioner urged the determination to focus not merely on the medical record but on the information offered in witness statements. Mem. at 4, 2-7.[7] He also maintained that, because of the severity and peculiarities of GBS as an injury (which features progressively worsening paralysis), I should consider an award higher than what might be granted for a qualitatively lesser injury, such as a shoulder injury related to vaccine administration ("SIRVA").

Petitioner also argued that his own experiences justified the requested award. Although he is a retired individual,[8] he emphasized his excellent health prior to

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of GBS claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[7] In this case, the narratives set forth in the statements submitted by Petitioner and his wife are fully supported by and consistent with the information contained in the medical records, and so I need not evaluate inconsistencies between the two.

[8] Petitioner retired from his job in February 2016, approximately 22 months prior to vaccination. Ex. 11 at ¶ 3.

3

vaccination, the multiple visits to different medical providers from early January 2018 until his diagnosis in February 2018 and the anxiety he experienced during this time, and his ongoing symptoms and failure to return to baseline thereafter. Mem. at 7-14; Petitioner's Reply ("Reply") at 1-3, ECF No. 39. He contrasted his experience with that of petitioners in four GBS injury cases, all of which resulted in pain and suffering awards of $180,000.00 or more.[9] Mem. at 19-23; Reply at 3-4. And he maintained a future component was also justified, since he continues to experience symptoms, fatigues more easily, and is unable to enjoy the activities he previously performed and was anticipating doing during his retirement. Mem. at 23-25; Reply at 4.

Respondent counters that Petitioner should receive the more modest sum of $80,000.00 for past pain and suffering, and no compensation for future pain and suffering. Respondent's Memorandum ("Opp.") at 5, ECF No. 36. Respondent notes that Petitioner's GBS was not as severe as the illnesses suffered by the petitioners in the four cases cited by Petitioner and did not prevent him from work. Opp. at 4-5. His injury also resolved within one year. In Respondent's view, Petitioner's GBS was similar to that experienced by the petitioner in the *Hooper* case, who received $80,000.00 for her past pain and suffering.[10] However, Petitioner pointed out in response that *Hooper* was a settled case, and there could be numerous undisclosed reasons why a claimant might take a lesser sum than he would in fact be entitled to receive otherwise.

## IV.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of petitioner's injury.

In performing this analysis, I have reviewed the record as a whole to include the medical records, unsworn declarations, and medical literature filed and all assertions made by the parties in written documents and at the expedited hearing held on July 31,

---

[9] These cases are as follows: *Johnson v. Sec'y of Health & Human Servs.,* No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $180,000.00 for actual pain and suffering and $6,000.00 for past out-of-pocket medical expenses and lost wages); *Dillenbeck v. Sec'y of Health & Human Servs.,* No. 17-0428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (a decision I issued awarding $170,000.00 for past pain and suffering and $10,857.15, the net present value of payments of $5,000.00 per year for 22 years); *Presley v. Sec'y of Health & Human Servs.,* No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. Mar. 23, 2020); *Fedewa v. Sec'y of Health & Human Servs.,* No.17-1808V, 2020 WL 1915138 (Fed. Cl. Spec. Mstr. Mar. 26, 2020) (awarding $180,000.00 for past pain and suffering).

[10] *Hooper v. Sec'y of Health & Human Servs.,* No. 17-0355V, 2019 WL 1875380 (Fed. Cl. Spec. Mstr. Mar. 22, 2019).

2020. I considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience adjudicating these cases.[11] However, I ultimately base my determination on the circumstances of this case.

This evidence shows that Petitioner was an extremely healthy, newly-retired 65-year old male at the time of vaccination. Ex. 6 at 245-73. On January 10, 2018, Petitioner visited his PCP in Pennsylvania, complaining of numbness in his fingers and toes which began on January 3, 2018, approximately fourteen days after vaccination. *See* Ex. 6 at 285. His symptoms began to progress, encouraging him to seek a neurologic evaluation. Ex. 3 at 72-74; Ex. 6 at 296; Ex. 11 at ¶ 13; Ex. 12 at ¶ 9. By February, he was alarmed enough about his symptoms to visit an ER, and the work-up he received did not suggest his problem was cardiac in nature. Ex. 2 at 41.

Due to continued deterioration, Petitioner was subsequently hospitalized from February 6-18, 2018. Ex. 9 at 25 (intake), 22 (discharge summary). Petitioner underwent seven courses of plasmapheresis over fourteen days. *Id.* at 113. There are numerous notations in these medical records from prior to and during hospitalization regarding the anxiety Petitioner was experiencing during this time. *E.g.*, Ex. 9 at 32, 113. I find that, in addition to the worsening symptoms and physical difficulties Petitioner was experiencing during this time, he was understandably troubled by the uncertainty surrounding his condition and its cause.

After his discharge, Petitioner made good progress while attending physical therapy ("PT") from February 23 through April 11, 2018. Ex. 2 at 84 (first PT session), 119 (last PT session). In the notes from numerous sessions, he is described as highly motivated and it was reported that he was buying equipment to use for his home exercises. *Id.* at 104, 119. It appears Petitioner was last treated for his GBS on December 21, 2018. Petitioner's GBS is described as resolved at this appointment, but the record also indicates he continued to experience residual symptoms that (as Petitioner's briefs corroborate) are common GBS sequelae.[12] *See generally* Exs. 13-18.

As I explained to the parties during the expedited hearing, it is my view that GBS pain and suffering awards generally should be higher than those awarded to petitioners who have suffered a less severe injury, such as SIRVA. In this case, I find the facts and circumstances of Petitioner's case more closely resembles those experienced by the petitioners in the cases cited by Petitioner than Respondent (whose *Hooper* determination

---

[11] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through July 31, 2020 reveals the median amount awarded $165,000.00 These awards have typically ranged from $125,000.00 to $270,000.00, representing cases between the first and third quartiles.

[12] *Compare* Ex. 7 at 11 (describing Petitioner's GBS as resolved) *with id.* at 7 (indicating Petitioner still has tingling in his feet and toes and continues to drop items).

is a proffer, and hence entitled to inherently less weight than a fully-reasoned decision). Thus, the four cases cited by Petitioner provide a general framework for calculating the proper award in this case. Those cases, and Petitioner's own experiences, justify an actual pain and suffering award of $180,000.00.

However, there are some significant differences between Petitioner's circumstances and those other cases – and those differences militate against also including a future component of pain and suffering. In the *Dillenbeck* case, for example, I awarded compensation for future pain and suffering – but there, the residual effects suffered by the petitioner prevented her returning to the job she had prior to her injury, as a veterinary technician and receptionist, and forced her to accept a less fulfilling position at lower pay. *Dillenbeck,* 2019 WL 4072069, at *4. Such facts supported inclusion of a future component, which compensated Petitioner not only for her expected residual sequelae but also for her having to live in an overall less-satisfying manner because of her injury.

Here, by contrast, Petitioner has not shown that the residual symptoms he continues to suffer will have as significant an effect on him in the future. I do not find that an award for future pain and suffering is warranted in this case, as the magnitude of the actual award is sufficient to compensate Petitioner for those residual sequelae he may still experience.

### V.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $180,000.00 represents a fair and appropriate amount of compensation for Petitioner's past/actual pain and suffering.[13] I find that Petitioner is not entitled to a future pain and suffering component.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $180,000.00 representing compensation for his actual pain and suffering in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[13] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The clerk of the court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.